## LINCOLN v. VIRGINIA PORTLAND CEMENT CO.

(Court of Appeals of District of Columbia.  Submitted April 2, 1919.  **Decided** May 5, 1919.)

### No. 3226.

1. REFERENCE ⬡⟾41—FITNESS OF SPECIAL AUDITOR—CONFLICTING AFFIDAVITS.

   Conflicting affidavits regarding an auditor's prejudice against defendant *held* not to show that the court abused its discretion in appointing him special auditor to complete a case which he had heard previously to his resignation as regular auditor.

2. APPEAL AND ERROR ⬡⟾967(1)—DISCRETION OF COURT—APPOINTMENT OF SPECIAL AUDITOR.

   A court's ruling that a person appointed special auditor was not disqualified by prejudice against the defendant will not be disturbed, except for an abuse of discretion.

3. REFERENCE ⬡⟾44—AUTHORITY TO APPOINT SPECIAL AUDITOR.

   Under Code of Law 1901, § 254, authorizing reference of a law case grounded on an account to a regular or special auditor, a regular auditor, who had resigned, may be appointed special auditor to complete a case he had heard before his resignation.

4. APPEAL AND ERROR ⬡⟾967(1)—HARMLESS ERROR—AMENDING EXCEPTIONS.

   No prejudicial error is shown in refusing permission to make a second amendment of exceptions to a special auditor's report, where the record does not indicate in what respect it was desired to change the exceptions.

5. REFERENCE ⬡⟾100(5)—AUDITOR'S REPORT—AMENDING EXCEPTIONS.

   The court did not abuse its discretion in refusing defendant permission to amend for the second time exceptions to a special auditor's report.

6. REFERENCE ⬡⟾100(5)—AUDITOR'S REPORT—AMENDING EXCEPTIONS.

   Ordinarily, allowing the amendment of exceptions to a special auditor's report rests within the sound discretion of the trial court.

7. REFERENCE ⬡⟾105—QUESTION FOR JURY.

   The defendant, in a case based upon an account and referred to an auditor, is not entitled to have a jury pass upon the question whether interest should be allowed, where there are no disputed facts regarding the interest items.

8. REFERENCE ⬡⟾100(4)—EXCEPTIONS TO AUDITOR'S ACCOUNT.

   Where an auditor found that plaintiff's count and inspection of sacks returned by defendant was to govern under the contract between the parties, and that credit was so given, defendant's exception, which failed to specify either that the contract did not so provide or that the credit given by plaintiff was incorrect, *held* insufficient.

9. REFERENCE ⬡⟾48—AUDITOR—AUTHORITY.

   Where a case was referred under Code of Law 1901, §§ 254–258, to audit and state the dealings between the parties, etc., the auditor was authorized to ascertain whether an account stated existed between the parties, and, if so, its scope.

10. REFERENCE ⬡⟾105—AUDITOR'S REPORT—EXCEPTIONS.

    Under Code of Law 1901, §§ 254 and 255, requiring exceptions to specify basis and requiring issues of fact raised by exceptions to be tried by jury, an exception that the evidence before an auditor failed to establish an account stated between the parties is too indefinite to raise a question of fact for determination by jury.

11. ACCOUNT STATED ⬡⟾19(3)—EVIDENCE—SUFFICIENCY.

    Evidence that the parties adjusted their books so as to make their statements of account correspond, that such account was recognized by de-

---

⬡⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fendant, who failed to produce his books of account, etc., *held* to sustain the trial court's finding that an account stated existed as a matter of law.

12. JURY ⬤⟿31(8)—RIGHT TO JURY TRIAL—REFERENCE.
Code of Law 1901, §§ 254–258, providing that law cases based on an account may be referred to an auditor and that exceptions to his report may raise issues of fact to be tried by jury, does not unconstitutionally restrict the right to jury trials.

13. REFERENCE ⬤⟿2—ACTION ON ACCOUNT—CONSTRUCTION OF STATUTE.
Code of Law 1901, §§ 254–258, authorizing reference to an auditor of law cases based on accounts, must be read according to the natural import of the language, without resorting to subtle or forced construction.

Appeal from the Supreme Court of the District of Columbia.

Action by the Virginia Portland Cement Company, a corporation, against S. Dana Lincoln, trading and doing business under the name of the National Mortar Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Lucas P. Loving, Wharton E. Lester, and L. L. Hamner, all of Washington, D. C., for appellant.

H. Ralph Burton, Walter C. Clephane, and J. Wilmer Latimer, all of Washington, D. C., for appellee.

SMYTH, Chief Justice. The Virginia Portland Cement Company, referred to hereafter as the Cement Company, sued S. Dana Lincoln, trading as the National Mortar Company, to recover from him over $8,-000, a balance alleged to be due for about 1,400 shipments of cement, which were made on different dates running through a period of about five years. The Cement Company recovered, and we are asked by Lincoln to reverse the judgment against him.

By consent of the parties the case was referred to Louis A. Dent, as auditor of the court, under chapter 4 of the Code, "to audit and state the account and the dealings between the plaintiff and the defendant and to report the same with his conclusions" to the court. While the case was in his hands he tendered his resignation as auditor, to take effect June 30, 1915. Before this date he had completed the taking of testimony but had not made his report. The testimony covered about 1,100 pages, and in addition thereto voluminous documents had been submitted to him. In these circumstances the Cement Company moved that the case upon the expiration of the auditor's term be referred to Mr. Dent as special auditor, to the end that he might complete his work under the original reference. This was opposed by Lincoln for various reasons set forth in affidavits. Among other things it was charged that the auditor was violently prejudiced against Lincoln. There were counter affidavits. In one the auditor denied any prejudice, and asserted that after the controversy had arisen one of counsel for Lincoln stated to him that he "was satisfied that the auditor was not imbued with any prejudice toward his client and would give him an unbiased and impartial finding." This statement in effect was admitted by the counsel referred to, in an affidavit filed two days later. Another affidavit alleges that Lincoln's resent-

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment was due to the fact that the auditor's rulings during the hearing were adverse to his conception of what he was entitled to. The court overruled the opposition and sustained the motion of the Cement Company.

Shortly afterwards Mr. Dent filed his report, which was in favor of the Cement Company. In due time Lincoln presented exceptions to the report, which were overruled. He thereupon asked leave to file amended exceptions, which was granted. The amended exceptions were overruled. A second application for leave to amend was denied, and judgment was then entered on the report.

[1, 2] Whether or not the special auditor was unfit to complete the report because of prejudice presented a question of fact, which was resolved by the court against Lincoln. We perceive no error in this. The matter addressed itself to the sound discretion of the court. As in the case of proposed jurors whose competency is challenged, the court's ruling should not be disturbed unless there was an abuse of discretion (Miller v. United States, 41 App. D. C. 52, 54; Paolucci v. United States, 30 App. D. C. 217, 12 Ann. Cas. 920; Reynolds v. United States, 98 U. S. 145, 156, 25 L. Ed. 244), and we are clear that there was none here.

[3] It was not only within the power of the court to authorize Mr. Dent to complete the work which had been assigned to him as auditor, but it would have been a mistake not to have done so under the circumstances. He had heard all the testimony, had listened to the contentions of counsel with respect to it, and was therefore peculiarly equipped to perform the duty involved. The Code (section 254, c. 4) authorizes the court "at any stage of the cause" to refer a law case grounded on an account to the regular auditor or to a special one, in its discretion. By the order assigning the case to Mr. Dent as special auditor the previous one committing it to him as auditor was in effect, though not formally, modified.

[4-6] Nor do we believe there was error in refusing to permit a second amendment of the exceptions. Lincoln requested leave to amend nine of them. This was granted, with the direction that the amendments must "point out specifically and precisely the grounds of such exceptions." They did not comply with this direction, and were rejected by the court. Lincoln then requested permission to further amend, but this was denied him. In the record there is nothing to indicate in what respect he desired to change his exceptions, and in the absence of a showing we cannot say whether the proposed change, if made, would be an improvement. If it would not, he was not prejudiced by the refusal. Besides, the matter of granting amendments is ordinarily in the sound discretion of the court, and where, as here, there is no abuse of that discretion, its rulings will be upheld. Meyers v. Davis, 13 App. D. C. 361, 364; German Evangelical Society v. Prospect Hill Cemetery, 2 App. D. C. 310, 315.

We now come to a more serious question. The Code (section 254, c. 4) provides that the exceptions "shall point out particularly the item or items" in the report excepted to and state the ground of the exceptions, and that the report shall be supported by an affidavit of the

party excepting that the allegations of fact set forth in the exceptions are true to the best of his knowledge and belief. And section 255 thereof provides that when the exceptions thus supported raise an issue of fact it must be submitted to a jury for its determination. Do the exceptions finally passed upon here raise a question of fact? If so, the court erred in not submitting it to a jury.

[7] Five of the exceptions relate to the allowance of interest. The auditor found that the contract between the parties provided for the payment of interest on each shipment after 60 days from the date of its delivery, but he did not follow the contract as to the greater part of the amount involved, because, as stated by him, of "the relaxation by plaintiff in his demand for strict compliance with the contract in this respect." He figured interest on the amount which he found due on August 28, 1912, the date that a demand for payment was made, which was several years after some of the shipments had taken place. Thus the Cement Company was allowed considerably less interest than it was entitled to under the contract. Certainly of this Lincoln had no cause for complaint. As to the items subsequent to August, 1912, he followed the rule of the Supreme Court of the United States, which provides that in case of partial payments "the creditor shall calculate interest, whenever a payment is made. To this interest the payment is first to be applied, and, if it exceed the interest due, the balance is to be applied to diminish the principal. If the payment fall short of the interest, the balance of interest is not to be added to the principal, so as to produce interest." Story v. Livingston, 13 Pet. 359, 370, 10 L. Ed. 200.

It is said that the auditor allowed compound interest in fixing the ultimate balance, but this is without any basis in the record. The process employed by him in determining the amount of the interest is clearly set out in the report. If he made any error in his calculation, or misstated any fact, Lincoln has failed to identify it, either "particularly," as required by the statute, or otherwise. True, the auditor gave interest on the final balance found by him from the date, April 15, 1913, on which "it was due and payable" (Code, § 1184); but this sum included no interest, for each credit exceeded at the time it was given the amount of interest, then due.

The contention that the question as to whether or not interest should be allowed at all was for a jury has no merit, since there was no disputed fact concerning it.

Exceptions 11, 12, 13, 16, and 17 are perhaps sufficiently definite to raise a question of fact for the determination of a jury, but the matters covered by them, except two small items, are all embraced, the auditor found, in an account stated between the parties. Whether or not he was authorized to make this finding is a point we shall examine in a moment; but if he was, and the account stated is binding, the matters referred to are not open to further investigation.

[8] The two items mentioned relate to sacks which Lincoln says he returned to the Cement Company and for which he was entitled to credit, but did not receive it. Concerning this the auditor found that under the contract between the parties "the count and inspection of

sacks by plaintiff [the Cement Company] at the mill was to govern the credit," and that he gave credit according to that count. Lincoln, in his exception, does not point out wherein this finding is incorrect. If the contract did not provide as the auditor found, or if the amount the Cement Company gave credit for was not correct, it would have been any easy matter for Lincoln to have said so in his exception; but he did not, and for this reason it was properly rejected by the court.

[9] With respect to the account stated Lincoln excepted to it on two grounds: (a) That the auditor had no authority to find whether or not an account stated existed between the plaintiff and the defendant; and (b) because the evidence taken before him wholly failed "to establish the existence of an account stated." Relative to the first, the declaration of the Cement Company was based in part "on account stated between them" (the parties). The cause was referred to the auditor, as we have seen, "to audit and state the account and dealings between the plaintiff and the defendant and to report the same with his conclusion." An account stated was a part of "the dealings between" the parties, and therefore the auditor was empowered to find whether or not one existed, and, if so, its scope.

[10, 11] In his report the auditor states specifically the ultimate facts upon which he based his conclusion that there was an account stated between the parties. He found that the statement of account of the Cement Company with Lincoln was taken from the former's books, and was compared with the latter's books; that after certain omitted entries were made, amounting to about $40, a balance was struck upon the books of both parties as of March 1, 1913; that the same is set out in a letter of March 26, 1913, written by the Cement Company to Lincoln; that Lincoln admitted the account referred to in the letter was his own account, made up from the Cement Company's invoices; that another paper produced by the Cement Company, and which it later appeared was brought by Lincoln to it, was a statement made by Lincoln's bookkeeper, which was apparently a reconciliation of the accounts of both parties by certain small adjustments; that Lincoln failed to produce his books of accounts in denial of the Cement Company's evidence; and that the Cement Company's testimony to the effect that there was an account stated was corroborated by letters produced by Lincoln. The latter in his exceptions makes no specific objection to any of these findings, does not point out "particularly the item or items therein to which he objects," but contents himself with saying that "the evidence taken before the auditor wholly fails to establish the existence of any account stated between the plaintiff and the defendant." This is entirely too indefinite to raise any question of fact for submission to a jury. The facts found clearly disclose an account stated, and the court did not err in so deciding as matter of law.

[12, 13] Chapter 4 of the Code is a valid exercise of legislative power. Simmons v. Morrison, 13 App. D. C. 161, 169. It does not deprive a party, in a proper case, of a trial by the common-law triers of fact, but provides a simple and workable method by which he may secure it. If the facts upon which the auditor finds against him are

specifically denied by him, he may have them tried by a jury; but, if he refuses to deny them specifically, and thus fails to raise an issue of fact, he has no just cause for complaint if the court holds as matter of law that he has not made out a defense. To sustain exceptions so vague and general as those before us, when preciseness was easy, if the facts warranted it, would be to fritter away by construction the chapter of the Code we are examining. The act must be read "according to the natural and obvious import of the language, without resorting to subtle and forced construction." United States v. Temple, 105 U. S. 97, 99 (26 L. Ed. 967); Moore v. United States, 249 U. S. 487, 39 Sup. Ct. 322, 63 L. Ed. 721, decided April 14, 1919.

The other objections argued, all of a minor character, have been examined by us and found to be untenable.

Finding no merit in any of the contentions of the appellant, the judgment of the lower court is affirmed, with costs.

Affirmed.